UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

GREGORY KELLAM,

                                        Plaintiff,

             vs.                                        9:04-CV-1225
                                                        (LEK/GJD)

CARL HUNT, Superintendent,
Ogdensburg Correctional Facility, et al.,

                                        Defendants.

_____

GREGORY KELLAM
Plaintiff pro se

SENTA B. SIUDA
Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, United States District Judge pursuant to 28 U.S.C.

§ 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that he has been denied

proper medical care in violation of his federal constitutional rights. (Dkt. No. 12).

Plaintiff seeks declaratory, injunctive, and substantial monetary relief.  Presently

before the court is defendants' motion for summary judgment pursuant to FED. R. CIV.

P. 56. (Dkt. No. 46).  Plaintiff has not responded to the motion.  For the following

reasons, this court agrees with defendants and will recommend dismissal of the

complaint.

## DISCUSSION

**1.    <u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*.

**2.    <u>Facts</u>**

In his amended complaint plaintiff alleges that in June of 2004 he was incarcerated at Coxsackie Correctional Facility and was examined by a "dynamic orthopedic foot specialist." Complaint at ¶ 3.  Plaintiff claims that the specialist prescribed special molded boots. *Id.*  Plaintiff was transferred to Ogdensburg Correctional Facility on June 29, 2004, before obtaining his special boots. *Id.*

Plaintiff alleges that on July 3, 2004, he was interviewed by medical personnel at Ogdensburg, and plaintiff inquired about his special boots. Complaint at ¶ 6.  Plaintiff states that the matter was referred to defendant Landry, the Medical Administrator at Ogdensburg. *Id.*  Plaintiff alleges that on July 8, 2004, plaintiff

2

received a letter from defendant Landry, explaining that there was nothing in his medical chart stating that he was "authorized" to obtain special boots from an outside vendor. *Id.* ¶ 7.  Plaintiff states that defendant Landry offered plaintiff "inserts" and state-issued boots and offered to make arrangements to have plaintiff measured for the state-issued boots. *Id.*

Plaintiff states that he wrote to defendant Hunt, the Superintendent of Ogdensburg, requesting his intervention, however, defendant Hunt did not reply.[1] *Id.* ¶ 8.  Plaintiff claims that he also wrote to Gary Filion, who was the Superintendent at Coxsackie Correctional Facility in order for him to try to clarify plaintiff's medical records with Ogdensburg. *Id.* ¶ 9.  Plaintiff claims that Superintendent Filion forwarded a memorandum to Ogdensburg, confirming that plaintiff's requested "treatment" was authorized. *Id.*  Plaintiff also alleges that on July 21, 2004, a telephone call from Coxsackie Correctional Facility medical personnel to the Ogdensburg medical personnel also confirmed the prescription. *Id.* ¶ 10.

Plaintiff claims that notwithstanding the authorization for the special boots, defendant Landry continued to deprive plaintiff of the "medical treatment," resulting in severe pain when walking, standing, and bending as well as harm to plaintiff's legs and back. *Id.* ¶ 13.

Defendants have supported their motion for summary judgment with various

---

[1] The court notes that plaintiff states that he wrote to defendant Hunt on July 2, 2004, however, plaintiff states that the first time that he asked about his boots was on July 3, 2004. *Compare* Complaint ¶ 6 *with* Complaint ¶ 8.  Plaintiff may have been mistaken about the date or there may be a typographical error in the complaint.  However, this error does not affect this recommendation in any way.

exhibits, including the affidavit of Mark Chalom, M.D., the Facility Health Services Director (FHSD) at Ogdensburg Correctional Facility. (Dkt. No. )(Chalom Aff.). Attached to Dr. Chalom's affidavit are three exhibits, consisting of some of plaintiff's medical records, together with sections of Department of Correctional Services Policy Manual. Chalom Aff. Exh. A-C.

Dr. Chalom states that plaintiff's medical records show that in June of 2004, plaintiff complained of painful calluses on his feet. Chalom Aff. ¶ 6, Exh. A-1. The FHSD at Coxsackie Correctional Facility, Jon Miller, M.D., referred plaintiff to an outside consultant on June 7, 2004. Chalom Aff. ¶ 7, Exh. A-1. Exhibit A-1 is the consultant's report.[2] The examination took place on June 11, 2004, and the report states that the consultant recommended pre-fab inserts to cushion the callouses and "extra depth," "extra wide" boots to prevent pressure on the callouses. *Id.*

Dr. Chalom states, however, that pursuant to the Health Services Policy Manual, the FHSDs have the sole responsibility for providing medical treatment to the inmates under their care, and that while outside specialists may make ***recommendations*** for medical treatment, the implementation of those recommendations is still at the discretion of the FHSD. Chalom Aff. ¶ 9. According to the Policy Manual, prescription footwear will only be provided with the approval of the FHSD. Chalom Aff. ¶ 10, Exh. C.

Plaintiff's medical records show that he requested sick call and was examined

---

[2] The consultant's signature is illegible, however, the identity of the consultant is irrelevant.

on July 13, 2004. Chalom Aff., Exh. A-4.  Exhibit A-4 is a portion of plaintiff's "Ambulatory Health Record" and contains three entries, one of which is the entry dated July 13, 2004, indicating that plaintiff was inquiring about his "Boots from Coxsackie." *Id.*  Contrary to plaintiff's assertions, the records show that when defendant Landry telephoned Coxsackie, she was informed that plaintiff had been approved for the pre-fab inserts, but that the FMD (facility medical director) had only approved wide-width state boots, not the boots that the specialist had recommended. *Id.*

Plaintiff was informed of this decision by memorandum from defendant Landry, dated July 14, 2004. Chalom Aff. Exh. A-2.  The memorandum states that the telephone call to Coxsackie confirmed that the FHSD at Coxsackie determined that boots from an outside vendor were ***not*** necessary, and that plaintiff could be fitted with wide boots through the State Shop. *Id.*  Defendant Landry told plaintiff that he would soon be measured for the boots, "the proper size boot [would] be made available[,]" and inserts would be ordered for the State boots. *Id.*  The court does note that plaintiff did receive a memorandum from Gary Filion, dated August 3, 2004, which states that plaintiff's medical records had been transferred to Ogdensburg. Defendants' LR 7.1 Statement, Exh. B at 2.  Superintendent Filion makes reference to the telephone call, and states that Coxsackie was "advised they were following through, and ***boots*** were on order."[3] *Id.* (emphasis added).

---

[3] Clearly, the "boots" had not been ordered, however, the July 14, 2004 memorandum from Nurse Landry to plaintiff states that the "inserts" would be ordered. Chalom Aff., Exh. A-2. The inserts were ordered.

Dr. Chalom states that, as the FHSD at Ogdensburg, he made the final decision regarding plaintiff's footwear. Chalom Aff. ¶ 14.  Dr. Chalom states that he reviewed plaintiff's medical records and determined that the appropriate footwear for plaintiff was wide-width State boots and inserts. *Id.* ¶ 15.  Dr. Chalom also states that plaintiff's medical records show that the inserts were ordered and received in July, 2004, and that plaintiff was measured for the wider boots, but plaintiff refused to accept them. Chalom Aff. ¶ 16, Exh. A-5.

Plaintiff filed two grievances regarding his footwear. Defendants' LR 7.1 Statement, Exhs. F & G.  One grievance was dated August 11, 2004, and the second grievance was dated March 2, 2005. *Id.* Defendants have submitted the documents relating to each grievance in support of their motion for summary judgment. *Id.*

Exhibit A-5 of Dr. Chalom's affidavit is an investigative report, written by defendant Landry in response to plaintiff's first grievance.[4] *Id.*  The report states that plaintiff finally went to the State Shop to be measured on August 11, 2004.  The inserts had been ordered and were received on July 20, 2004, however, plaintiff ***refused*** the State boots that were the proper width and size. *Id.*  Although plaintiff disputed at his deposition that he was ever measured for the boots, the documents show otherwise.  The record also contains an investigative report from plaintiff's second grievance. LR 7.1 Statement, Exh. G at p.10.  This report is authored by Perry Downing, and it states that ***he measured*** plaintiff's feet in August of 2004, and that

---

[4] This report also appears in Defendants' LR Statement, Exh. F at p.3, together with the rest of the documents relating to plaintiff's first (August 2004) grievance.

they measured "10½ D," but that plaintiff refused the proper size boots.[5]

The Department of Correctional Services (DOCS) Health Services Policy Manual (the Manual) No. 1.50 states that in cases where medically indicated, inmates will receive prescription footwear "with the approval of the Facility Health Services Director . . . ."[6]  Chalom Aff., Exh. C.  The Manual further states that inmates who have concerns about their footwear will be referred to the State Shop for proper measurement. *Id.*  The Manual states that certain medical problems may exist requiring the issuance of prescription footwear, but that the issuance of this footwear must be in the clinical judgment of the health care provider ***with the approval of the FHSD***. *Id.*

Finally, if a problem is found to exist, DOCS policy requires that "conservative treatment measures must be utilized before any prescription footwear is considered." *Id.*  The conservative measures[7] must be utilized for a period of at least three months. *Id.*  However, after three months of conservative treatment, an inmate may be re-evaluated, and may then be afforded prescription footwear if approved by the FHSD. *Id.*

Plaintiff was deposed in this action on June 28, 2006, and a transcript of that

---

[5] The court notes that the records indicate that plaintiff had been wearing "9½ D" boots, making it understandable that he would be experiencing pain, since the boots were one size too small in the first place. *See* Defendants' LR 7.1 Statement, Exh. G at p.6.

[6] There is an entire section of the Manual dedicated to "footwear."

[7] The conservative measures are listed as inserts, arch supports, corn pads, lifts, wedges or heels. Directive No. 3081(2)(A).

deposition has been filed in support of defendants' motion for summary judgment.
Defendants' LR 7.1 Statement, Exh. A.

**3.**   **Medical Care**

In order to state an Eighth Amendment claim based on constitutionally
inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently
harmful to evidence deliberate indifference to serious medical needs." *Estelle v.
Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate
indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The
first element is ***objective*** and measures the severity of the deprivation, while the
second element is ***subjective*** and ensures that the defendant acted with a sufficiently
culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d
698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has
a sufficiently serious illness or injury. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9
(1992).  A medical condition has been considered "sufficiently serious" when there is
a "condition of urgency," one that may result in death, degeneration, or extreme pain.
*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The seriousness of a
plaintiff's medical need may also be determined by reference to the effect of denying
the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*,
151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted).  Thus, if unnecessary and
wanton infliction of pain results from the denial of treatment, or if the denial of
treatment causes the inmate to suffer a lifelong handicap or permanent loss, the

condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).

In order to meet the second element of the standard, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id.* (citing *Estelle*, 429 U.S. at 105-106). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Disagreement with prescribed treatment does ***not*** rise to the level of a constitutional claim. *Sonds*, 151 F. Supp. 2d at 311. Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does ***not*** have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Thus, disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312

(citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does ***not*** become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.

In this case, plaintiff has failed to establish a genuine issue of material fact regarding the constitutionality of his medical care. Plaintiff has failed to show that either prong of the deliberate indifference test has been met. First, plaintiff has failed to show that he had a "serious medical need." His medical records show that plaintiff was complaining about "painful callouses" on his feet. During his initial health screening at Ogdensburg Correctional Facility, he stated that he did not have a current health problem, and did not complain about pain in his feet. Defendants' LR 7.1 Statement ¶ 14, Exh. C. At plaintiff's deposition, he stated that since he was transferred to Gouverneur Correctional Facility in June of 2005, he has not asked about prescription boots, inserts, or discussed these needs with a physician. Defendants' LR 7.1 Statement, Exh. A, Dep. at 21-26.

Plaintiff did state at his deposition that he "explained" his problem to the doctor at Gouverneur, and that the doctor prescribed pain killers. Dep. at 23. However, the doctor did not "do" anything else for plaintiff's foot pain. *Id.* Plaintiff stated that although he discussed his pain with the doctor, he did not discuss the special shoes with the doctor because he was afraid that someone would "retaliate" against him. Dep. at 23-24. Plaintiff did not even request the inserts. Dep. at 26. In any event, the

10

doctor at Gouverneur did not send plaintiff to a specialist for the pain in his feet. *Id.*
Plaintiff testified that he was aware that he could go to the State Shop and request new
boots, but chose not to do so because he does not "want the actual ink off the new
boots to get onto [his] feet." Dep. at 25.

It has been held that foot callouses or other foot problems do not rise to the
level of a "serious medical need." *See e.g. Cole v. Scully*, 93 Civ. 2066, 1995 U.S.
Dist. LEXIS 5127, *15-17 (S.D.N.Y. April 18, 1995), *aff'd without op.*, 89 F.3d 826
(2d Cir. 1995); *Brown v. DeFrank*, 06 Civ. 2235, 2006 U.S. Dist. LEXIS 83345, *66-
68 (S.D.N.Y. Nov. 15, 2006)(holding that prisoner complaints about bunions or other
foot problems do not establish the objective prong of the deliberate indifference
standard); *Bennett v. Hunter*, 02-CV-1365 (N.D.N.Y. Mar. 31, 2006)(Report-
Recommendation)(citations omitted), *adopted*, (N.D.N.Y. May 1, 2006).

Although these cases are quite clear in their holdings that foot problems do not
rise to the level of a serious medical need, this court is not relying on the case law
alone. **Plaintiff's own testimony** shows that plaintiff was not experiencing a serious
medical need when he complained about his callouses either to the medical personnel
at Coxsackie or to the defendants at Ogdensburg. Plaintiff's refusal to accept the
wider boots and the inserts at Ogdensburg, together with his comment that he did not
get new boots at Gouverneur because he did not wish to get ink on his feet are
indications that his foot problem could not have been very serious. The fact that he
never mentioned his special boots or inserts after being transferred to another facility
also shows that there was no condition of urgency or serious medical need. Thus, he

has not established the first prong of the deliberate indifference test.

Plaintiff has also failed to establish the second prong of the deliberate indifference test.  It is clear that plaintiff had a disagreement with the treatment prescribed for his calluses.  The consulting physician recommended prefab inserts that were ordered for plaintiff.  In addition, the consultant's report simply states that plaintiff should receive "extra depth boots extra wide" to prevent pressure on the calluses. Chalom Aff., Exh. A-1.  A review of the consultant's report does not show that he specified any particular type of prescription boot.  However, even assuming that the outside consulting physician did prescribe a special type of boot, there is no showing of deliberate indifference by defendants.

After plaintiff requested the special boots at Ogdensburg, defendant Landry investigated the situation.  Contrary to plaintiff's allegations, defendant Landry was told that the Facility Medical Director at Coxsackie had determined that plaintiff simply needed State boots that were extra wide. *Id.* Exh. A-3.  Thus, it appears that it was the FHSD at **_Coxsackie_** who determined that prescription boots from an outside vendor were not required for plaintiff.  In any event, Dr. Chalom, the FHSD at Ogdensburg, reviewed plaintiff's medical records and states that he also determined that extra-wide boots made in the State Shop, together with the special inserts that **_were ordered_** for plaintiff would be sufficient.  Plaintiff finally went to be measured for the boots, but refused to try them.[8] *Id.* Exh. A-5.

---

[8] At his deposition, plaintiff alleges that he went to the State Shop, but was never measured for the boots because he signed a refusal. Dep. at 30.

Plaintiff did not accept the wider boots, nor did he even try the boots with the inserts that had been ordered. Based on all the evidence, there is no question of fact regarding defendants actions. Plaintiff has simply failed to establish either prong of the deliberate indifference test, and his complaint should be dismissed.

## 4.   Respondeat Superior and Personal Involvement

It is well-settled that the personal involvement of a defendant is a pre-requisite to the award of damages in a section 1983 action. *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). Liability may not be based on the theory of *respondeat superior. Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Defendants in this case also argue that plaintiff has not alleged sufficient personal involvement by defendant Hunt. Although this court has already recommended dismissing this action based on a failure to establish deliberate indifference, it will also discuss defendant Hunt's alternative argument.

In the amended complaint, plaintiff's only claims against defendant Hunt are that he ignored letters that plaintiff wrote to him complaining of the denial of his special boots. Plaintiff sent two letters to defendant Hunt, one dated August 10, 2004 and the other dated August 11, 2004 in which he complained that he had not received his medical boots and told defendant Hunt that he had filed a grievance regarding this matter. Defendants' LR 7.1 Statement, ¶ 3, Exh. B. Plaintiff received a response to those letters from Deputy Superintendent of Administration, Susan Wilson. *Id.* Deputy Superintendent Wilson informed plaintiff that an investigation was being conducted and that his complaint was being addressed through the grievance process.

13

*Id.*

The fact that plaintiff addressed letters to defendant Hunt, but did not receive a response from that defendant is insufficient to establish that defendant Hunt was personally involved in plaintiff's case.  It has been held that even if a supervisory official ignores a letter of complaint, this does not make him or her personally responsible for an inmate's alleged constitutional violation. *See Boddie v. Morganthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004)(citations omitted). Additionally, the fact that defendant Hunt referred plaintiff's complaint to a subordinate who addressed the issues does not show that defendant Hunt ignored plaintiff's complaints in any event.

The court does note that one of plaintiff's grievances was denied at the Superintendent's level and that the signature on that denial appears to be that of defendant Hunt, although, the signature is almost illegible. Defendants' LR 7.1 Statement, Exh. F at p.11.  If, in fact, defendant Hunt did review and deny plaintiff's grievance, he ***may*** have been personally involved in any claim that plaintiff might have.  However, since the court has determined that plaintiff has not established any constitutional claim, his case may be dismissed regardless of whether the signature on the denial of the grievance belongs to defendant Hunt.

5.      **<u>"State Law Claims"</u>**

The court notes that in the introductory paragraphs of his amended complaint, he states that he "also alleges the tort of negligence," alleging that the court has supplemental jurisdiction over any state law tort claims. Amended Complaint at p.1.

There is no further mention of state law claims, and plaintiff's causes of action mention only constitutional claims.  In any event, as defendants correctly state, any violations of New York State Law (assuming there were any violations) would not create liability under section 1983. *See Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.), *cert. denied*, 484 U.S. 896 (1987).

To the extent that plaintiff is attempting to bring a state law tort claim, he would be barred from doing so by section 24 of the New York Corrections Law. N.Y. CORRECT. LAW § 24(1). *See Thomas v. Andrews*, 97-CV-267, 2006 U.S. Dist. LEXIS 71709, *27-28 (W.D.N.Y. Sept. 27, 2006).  Section 24(1) provides that an individual[9] may not bring a civil action in any state court against an officer of the Department of Correctional Services for damages arising out of actions taken within the scope of his or her employment and in the discharge of his or her duties.  Because a federal court acts as a state court when considering a state law claim brought pursuant to the federal court's supplemental jurisdiction, the federal court may not consider state law claims against corrections officers. *See Baker v. Coughlin*, 77 F.3d 12 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 46) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETEY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections

---

[9] According to the statute this type of action may only be brought by the Attorney General on behalf of the State. N.Y. CORRECT. LAW § 24(1).

shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 4, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

16